Okay, thank you. The next case is number 19-1746, Ford Global Technologies v. New World International. Mr. Oak. Thank you, your honor. Good morning, and may it please the court. The summary judgment of infringement is... Mr. Oak, this is Judge Wallach. I have some questions for you. Okay. In the red brief at 15, Ford states an inconsistent drawings and descriptions argument that you, quote, appear to be arguing that what is labeled a side view should have been labeled a top, That's an argument that we were precluded from making because of the claim construction, but under proper claim construction, when the written description is imported into the claim as it should have been, you can argue inconsistencies between the drawings and the written descriptions if they create uncertainty under the Nautilus test. Okay. So, you are arguing that what is labeled a side view should have been labeled a top, bottom, or front view? Well, again, we were precluded from making that argument due to the claim construction, but that certainly would have been an argument that would have been available to us. Counsel? Counsel? Yes. Judge talks, you stop. Understand? Yes, your honor. All right. So, the answer is, that is what you're arguing. You can't say, I'm precluded, or you would say, no, I don't have any argument here. Well, yes, I do believe that creates an inconsistency and is a basis for indefiniteness when there's an inconsistency between the written description and the drawings. Okay. That inconsistency, according to you, is labeling side as opposed to top, bottom, or front. That's your position. Well, that's one of our positions. There's a lot of other things that indefiniteness in these patents, but that certainly would contribute to it. Stop. Stop. I'm only asking you about that one position. Now, I'm going to ask you another question. Okay. In the red brief at 15, Orange says that you argue that, quote, parts link numbers corresponded to a part that did not match the part covered by, covered by, close quote, an infringed patent, but that none of the patents you mentioned are at issue in this appeal. What possible relevance does your argument about patents that are not at issue in this appeal have to this appeal? Because the patents that I refer to that are not in this appeal are in the table, and they destroy the assumption that Ford relies upon to create actual notice from the table. The only thing that that table is good for is determining what parts will fit into the automobile. It's not good for a specific accusation of infringement. That does not hold up along all the lines. In fact, the very first line does not support that assumption. And since there's not a specific accusation of infringement of a specific patent by a specific part, you do not have actual notice. Okay. Turning to the indefiniteness issue, Ford argues in the red brief at 19 that you forfeited any argument about Matita because you didn't mention it at the charging conference, and that you didn't argue that it contains a different standard than Nautilus. Did you make any argument before the district court in any involving Matita? And if so, please provide me with a cite. Mentioned in the brief is that we moved for a continuance. As this trial was approaching, the Matita decision was decided, and it appeared to change the test for indefiniteness by engrafting the ordinary observer test onto indefiniteness. We said if the standard is going to change, we need new expert reports. We need new discovery with regard to the prior art which affects the ordinary observer test. The district court ruled that in re Matita did not apply to this case. But I believe that's something this court can review because indefiniteness is a matter of law that is reviewed on a de novo standard, and it can be decided based on the intrinsic evidence alone in this case. So that is an issue this court can review. Okay, turning to your spoliation instruction argument in the blue brief at 72, did you raise the argument that the instruction needed to be permissive rather than mandatory before the district court? And if so, give me a We objected to the jury instruction, not on that specific basis, but we objected to it, and we believe we are now entitled to make that argument. That answers my question. Okay. And one last set of questions. In the blue brief at 57, you raise an enablement challenge. That is, you say, this testimony indicates that the design patent was not enabled under 112. Beside the testimony you point to it on page 57 of your brief, did you argue the design patents were not enabled before the district court? That statement was in the pretrial order, and in En Re Matita, this court says that enablement and indefiniteness are basically the same question in design patents. Did you seek a jury instruction on enablement? No. Did you raise this issue in your JMOL motion? I don't believe we did, no. We argued, as En Re Matita states, you can argue indefiniteness and enablement under the general rubric of indefiniteness, and that's what we did. Okay. Thank you, counsel. You're welcome. Returning to the issue of infringement, this summary judgment should be reversed, because the district court failed to properly apply the ordinary observer test in its analysis, and it improperly decided contested issues of fact. The district court never compared the patented and accused designs to the eyes of a purchaser of the accused products, and never made any findings or conclusions in that regard. Rather, the order relies heavily upon the testimony of New World's own expert, and in fact, it starts off with a discussion of the testimony. But that testimony cannot support summary judgment of infringement for several reasons. As a preliminary matter, the testimony relied upon has been corrected and explained under Rule 30E with sufficient justification. So, the correction should be considered, and as such, they raise issues of fact. But even if the corrections are not considered- I disagree with that, Your Honor. Under Rule 30E, you're allowed to make changes in substance or in form. For instance, the transcript failed to include a word that it should have included, or I misspoke with respect to, you know, calling it singular instead of plural. But to say, my testimony is XYZ, and now it's the opposite of XYZ, is not a correction within the meaning of that rule. Your Honor, I disagree. I think under Rule 30E, you can make changes in substance, and what the courts do is simply allow the jury to see both versions, and to decide as a matter of fact. Now, there are some cases out there from the Third Circuit that talk about an abuse of discretion, but even if we apply that standard in this case, which I don't think it should be, but even if we do, it is an abuse of discretion not to consider it because there's sufficient justification. And I go through that in the brief. There are frequent shifts in the topics between multiple standards. The questions are ambiguous. Importantly, the conflict created by the declaration was already in the deposition. For example, immediately after the question and the expert testified that he considered all the ornamental features in the design patents and found them not to be substantially similar. That's immediately after this question and answer. So this testimony conflicts with how the order interprets the preceding answer and supports the expert's correction and explanation that he misunderstood the question. Secondly, the question itself refers to a single claim. It says claim designs, and the court had to change that in its opinion to add an ED to make it make any sense, but you've got to stick with the original question. So which claim is it? That's not clear, and it presents an issue of fact. So when the court is interpreting these questions and answers, it's drawing inferences in Ford's judgment. Then a second set of questions and answers are referred to on Appendix 11481 and 11482, but here the expert's referring back to earlier answers he gave regarding only the 552 patent and the accused headlamp where he answered in terms of substantial similarity. I mean, the judge pointed to several concessions that he made. This wasn't just one off-the-cuff statement that he quickly corrected. The court pointed to several places in which your expert confirmed that these were the same designs. Well, I'm addressing the only two places that are referred to in the order. In the first one, only one claim is referred to. That's ambiguous. We don't know which one. In the second set, if you read it carefully, and again, the judge has used this testimony support summary judgment over all 13 design patents, so it's got to be specific, and it's not. He's referring, if you look carefully on this substantial similarity, what the expert is doing, he's referring back to an earlier question where he answered in terms of substantial similarity and that they could be virtually identical. He never states that they were substantially the same, which is the test. Didn't he specifically say that he was referring to the ordinary observer test? No, he did not. Not on these questions. That standard was never used, never a part of these questions. He was not asked to consider it in light of the prior art, and he was not asked what an ordinary observer would consider. The proper standard was not used. I'll also note on these questions is that these questions referred to the 552 patent and the accused product, these are the ones referred to in the jury note where the jury did not want to find willful infringement because they thought the accused product was inconsistent with the design patent. That certainly supports the expert's interpretation of these questions and answers in the fact that the judge had to resolve contested issues of fact in order to support these. Am I in my rebuttal time? I haven't heard. No, we'll save your rebuttal time, but let's make sure. Any more questions at the moment from the panel? Judge O'Malley? I do have one question before you sit down, and that is that you argue that the defendants shouldn't have been treated as one collective entity, but in the pretrial order and in the proposed verdict form, didn't you treat them as one collective entity yourself? Well, Your Honor, there's... Come on, yes, you could just say yes or no. Well, I believe that the pretrial order may have treated them as collective entity, but that's not the governing issue on the judgment. The governing issue on the judgment... Well, there has to be a manifest error of law. Was it in your proposed verdict form that way? No. No, the verdict form only was absolutely expressly limited to New World only. Right. It did not include Auto Lighthouse or UCC. Because you had treated them as one collective entity and discussed them as one collective entity in front of the jury, right? No, because counsel for Ford expressly made the decision not to include them in the verdict form. Okay. Okay. We'll ask... All right. Judge Wallach, any questions at the moment? No, thanks. Okay. We'll save this little rebuttal time, and let's hear from the other side. Ms. Ellsworth. Good morning, and may it please the court... Excuse me, Ms. Ellsworth. Proceed. Thank you. Thank you, Your Honor. Good morning, and may it please the court, the evidence here has merit, and many of them are waived, as this court's questions have indicated. The evidence showed that New World infringed the patent, and a reasonable jury could have returned the verdict it did on definiteness, willfulness, and damages, among other issues. Beginning with the infringement question that my counsel on the other side argued to you, he focused on an errata that was submitted by his expert after the summary judgment ruling had occurred. And I think it is important in noting that that submission to the district court was not made until after the summary judgment ruling occurred. This really was sort of an act of gamesmanship by New World. In their opposition to summary judgment, they tried to submit a declaration to see if that would be enough, and have their expert say he was confused. They didn't submit the errata until after the district court had ruled, and found that that declaration couldn't be used to give inconsistent testimony. And as Your Honor noted, Judge O'Malley, there were numerous statements made by New World's expert throughout this deposition that support the district court's in his decision. He also looked at 30 pages of side-by-side comparisons of the accused product and the patented designs. And you can see that in the appendix laid out in the summary judgment briefing at 5486 to 5516. And he noted in his ruling that New World didn't contest that side-by-side comparison. All of this evidence was sufficient to give the district court the authority it needed to decide that no reasonable jury could return a verdict of non-infringement based on this evidentiary record. As the court has noted, the notice issues were one for the jury to decide, and there was sufficient evidence for each of the 13 patents at issue that there was notice. The indefinite argument about Makita was not raised at the time of the jury instructions. It was not raised in the 50A motion. And even if it were preserved, New World hasn't told you why it would matter. What do we do with the fact that the jury didn't think that there was substantial similarity with respect to at least one of the products? So, Your Honor, for one thing, the jury wasn't instructed on what the standard is for infringement. And I think that's particularly important because the jury, not knowing that the standard is one of substantially the same and not knowing what the standard is, but those are two very key absences in the information that was presented to the jury. And so I don't think there can be anything read into that note. It's exactly as Judge Godbee noted. He could see why New World would move for reconsideration, but the evidentiary record on that legal question remained the same as it was at summary judgment. And for that reason, he saw no reason to question his summary judgment ruling. How can the jury decide infringement of a design patent without comparing them? When you say the jury wasn't instructed on the legal standard, they certainly were told that this was a question of infringement of a document with drawings. Was that how it was presented? So, Your Honor, they were told that the court had determined that the patents were infringed if they were valid. So, the jury was asked to make a determination of indefiniteness. And then if it found that the patent that New World had not proved in validity, then it was to determine if damages were appropriate and what those damages would be. And there was extensive damages testimony put on. There was an extensive argument about notice that was made to the jury. And the jury was within its discretion to conclude that there was notice and also that the infringement was willful. There was a lot of testimony about kind of backdoor sales and asking to pay for cash and deleting inventory records, you know, all sorts of things that could have led the jury to reasonably conclude willfulness was a proper finding, notice was properly found, and then the indefiniteness was also for the jury to reach that factual determination. And on that, I think it's important to note that Coucher, in his testimony to the jury, explained on cross-examination that many of the things he'd identified as differences were just variations in perspective. And he told the jury, I've only been instructed to look for differences, and he told the jury that he could resolve all of the differences that he had identified. You can see examples of this in the appendix at 11198, 11194, 11210 to 218, 11240 to 250. I could go on. There was extensive evidence supporting the jury's verdict. I have a question, again, going back to infringement. One of the things that concerned me is that it seemed like, even if we accept the fact that the New World expert admitted certain things and didn't have the right to unadmit them or pull them back, it seemed like the judge was treating those admissions almost like judicial admissions that are binding and determinative, rather than simply an evidentiary admission that gets weighed with all the other factors. Am I reading that wrong? I think you might be reading a little bit too much into the weight that he gave it. The judge stated the ordinary observer test, and then he went through and explained why New World's expert testimony that there was substantial similarity between the accused products and the forward products, between the accused products and the patented designs, was sufficient to preclude there from being a disputed fact here. There was really nothing to weigh on the other side, because what New World had attempted to offer was its expert, but its expert at deposition had really folded, in a sense, and agreed extensively that all of the ornamental aspects of these patents could be found in the accused products. He agreed that they were substantially the same twice, and he agreed that the visually dominant aspects of the patented designs were all found in the art. When you combine those statements by the witness with the 30 pages of side-by-side comparisons, and you can see this at appendix page 80, where the court said a simple side-by-side comparison confirms that they're substantially the same. New World did not dispute the accuracy of these side-by-side comparisons. In a sense, that second piece is like this court's decision in the Crocks case, where it did something similar. It did a side-by-side comparison, and in comparison after comparison, the two products looked nearly identical. And that was enough for this court, actually, in that case, to reverse an ITC decision, finding that they had been different. So when you have the expert testimony from the defendant's own expert, and then you have the side-by-side comparison, I mean, there just wasn't any other side. If your honors have no further questions, we ask that this court affirm the judgment below. Okay, any more questions, Ms. Ellsworth? Judge O'Malley? No, I'm fine, thank you. Judge Wallach? I actually have one. Okay. In the gray brief at 24, New World says it didn't have to raise enablement at trial, and your friend on the other side went into this at some length. I'd just like a response on that, please. Certainly, your honor. I think his argument is based on the fact that In re Matita said the two sometimes go hand-in-hand, but the fact that the two sometimes go hand-in-hand isn't a freebie to avoid asking for a jury determination of invalidity based on lack of enablement, and to come in after the fact and say, oh, these patents weren't enabled. They didn't ask the jury to decide that question. They didn't ask the jury to be instructed on that question, and that was not enough to preserve what is a separate and distinct basis for finding invalidity. Okay, anything else, Judge Wallach? No, thank you. Okay, thank you, Ms. Ellsworth. Mr. Oakes, you have your rebuttal time. Yes, thank you, your honor. First, as a factual matter, it's not true that the declaration was filed after the summary judgment was granted. The declaration from the expert was filed in the response to the summary judgment, and it was within the 30-day period for corrections, and it was because of that, because the deposition was taken so close to when Ford filed its overriding point here, both on infringement and indefiniteness. This case illustrates the importance of applying the correct standards in a design patent case. The correct standard was not applied because Gorham versus White, you've got to do the comparison to the eyes of the purchaser, and that was not done here, and that would have made a critical difference because, in this case, the purchaser is a purchaser of repair parts and is trying to return the vehicle back to its original appearance. Therefore, the ordinary observer purchaser is highly discerning. That is something that has been admitted by Ford in the ITC action. When you talk about the side-by-side comparison that the court made, the court... ...parts manufactured by your client, laser copy? Yes, but you do not... I'm sorry, go ahead. What does that imply? What's a laser copy? It's an exact copy of the commercial parts, but, of course, in an infringement analysis, you do not compare commercial part to accused part. You compare it to the design patents, and, in this case, there are substantial differences. I mean, if you look at Appendix 6036 to 6037, you're comparing the headlamp and Figure 3. There's a round top to the lens, and in the accused part, there's a flat top. Your own expert specifically said that Ford's parts were the same as what's depicted in the designs, and then you turn around and make exact copies of Ford's parts. No. Right? That's... No. The court resolved the disputed issue of fact. On that question and answer, it only refers to one claim, and also it didn't include the standard. It's not clear that he was would believe. A designer of ordinary skill only compares part to accused patent. Under the proper test, you're really looking at four different things. You're looking at design patent claim. You're looking at accused part in light of the prior art, which was not done, and you're also referring back to the original part. So, you're really looking at four things in the analysis, and the questions were not directed to the proper comparison. Finally, there is no finding or conclusion by the district court that a purchaser would have considered these to be substantially the same, and without that statement, this summary judgment is fundamentally defective, doesn't apply the right standard, and cannot stand. And if it falls, then the judgment on damages, and willful infringement, and attorney's fees, that must fall as well. Okay. Any more questions for Mr. Oak? Judge O'Malley? No. Thank you. Judge Wallach? Thank you. Okay. Thank you. The case is taken under submission.